American Waste Co., Inc., Respondent, *v.* Joseph St. Mary, Appellant.

First Department, October 31, 1924.

Sales — warranty — action for breach of warranty of quality on sale of cotton pickings in bales — sale was by sample but plaintiff, under agreement, had its agent inspect bales and take samples before acceptance — plaintiff's agent reported goods up to sample and sent samples to plaintiff that were taken from bales — part of bales alleged to contain caked and short stock — said portion was never examined by plaintiff after shipment and passed to third person who discovered defect — goods were shipped in November and paid for but complaint was not made until following April — defendant is not producer and had no knowledge of contents of bales other than shown by sample presented to plaintiff — warranty of sale by sample does not survive acceptance where purchaser makes independent inspection before acceptance — defect was not latent — evidence of identification is slight — plaintiff did not reject goods within reasonable time.

A purchaser of goods sold by sample cannot, after the goods are accepted and paid for, repudiate the sale or claim a breach of warranty of the quality of the goods, where the parties had stipulated not only that the goods should be of a particular kind and should correspond to the sample submitted, but also that they should be tested by a person to be selected by the purchaser before delivery or acceptance, to ascertain whether or not they were of the quality represented, and where the test is made and the goods are accepted and paid for without collusion between the buyer's inspector and the seller.

Accordingly, in an action to recover damages for the breach of a warranty of the quality of cotton pickings contained in bales, based on the fact that a part of the shipment contained caked or short stock, the warranty does not survive the acceptance of the goods, though the sale was made by sample, where, under the terms of the agreement, the buyer had the goods inspected by its own agent, who took samples from the bales and sent the samples so taken to the plaintiff, and reported that the goods corresponded to the sample by which they were sold to the plaintiff, and where it appears also that the seller was not a producer of the cotton pickings and had no knowledge of the contents of the bales, except that shown by the sample which he submitted to the purchaser.

The alleged defect was not a latent one, since it appears that it would have been a very easy matter, by means of borings, to have ascertained the quality of cotton pickings in the center of the bales. It was the duty of the buyer to make an inspection of the bales after shipment for the purpose of ascertaining the quality, which duty it failed to perform.

Furthermore, it appears that the goods in question, without coming into plaintiff's possession, were sold to a third person, who, in turn, resold them. The evidence, that the bales of cotton pickings which were found to be defective were the same bales shipped by the defendant to the plaintiff, is very meager.

The goods in question were shipped in November and the alleged defects which constituted the basis for the plaintiff's claim of a breach of warranty were not discovered, and the defendant was not notified thereof until the April following. Under the circumstances, the goods were not rejected within a reasonable time after they had been delivered, accepted and paid for.

APPEAL by the defendant, Joseph St. Mary, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of November, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of October, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Edward D. Brown* [*Charles Hollender* of counsel], for the appellant.

*Charles Grossman,* for the respondent.

MERRELL, J.:

The action was brought to recover damages alleged to have been sustained by the plaintiff by reason of breach of warranty by the defendant on the sale of fifty bales of cotton waste or " cotton pickings," as the commodity was called. According to the testimony of the plaintiff's president and general manager the plaintiff entered into a contract in September, 1919, for the purchase from defendant of 101 bales of cotton waste. The plaintiff was a Massachusetts corporation having its principal office in the city of Boston in that State. The defendant was a jobber of cotton pickings or waste having his principal place of business at Houston, in the State of Texas. According to the testimony of plaintiff's president and general manager the contract for the sale of these goods was verbal and was made at the plaintiff's office in the city of Boston. Plaintiff's president testified that the defendant called at his office and that he told the defendant that plaintiff could use some good pickings if defendant could find any. These so-called pickings were refuse cotton which came or was picked from the bales of cotton and was used in the manufacture of coarse yarn and other products where first-grade cotton was not required. Plaintiff's president testified that the defendant offered him on this occasion 101 bales of cotton pickings equal to a sample which had theretofore been delivered to the plaintiff by the defendant at twelve cents f. o. b. New York basis, " the material to be looked at and approved in Houston." Plaintiff's president testified that he accepted the defendant's offer on that basis and arranged to have a man, a public sampler, at Houston, look the pickings over. The defendant testified at the trial that he told plaintiff's president that he had some low-grade damaged pickings of cotton for sale; that he had accumulated these and wanted to sell them and in selling them wished plaintiff to have a representative receive them at the time they were sold, because he, defendant, did not want any " aftermath," as he expressed it; and that he wanted to know when the cotton was delivered that it would be out of his possession and that he would hear nothing more from it; and that plaintiff's president

stated that that was satisfactory to him. There is no denial of that part of the testimony of the defendant that he wished the plaintiff to have a representative receive the goods and wanted no aftermath to the transaction after the goods were once inspected and found right. Plaintiff's president and general manager testified that he accepted the defendant's offer for the 101 bales of cotton equal to the sample " to be approved at Houston, Texas," by the public sampler or some man whom the plaintiff should choose down there. Plaintiff testified that he chose a man who inspected the goods, and that his said representative reported that the goods sold to the plaintiff were, except for a small part for which allowance was duly made, found to be satisfactory and up to the sample submitted by the defendant to the plaintiff. Plaintiff's president testified with reference to his selection of an agent to examine the pickings at Houston, that he informed a Major Towles of Houston, Tex., who was engaged in public sampling and weighing cotton of every description, and sent to him the sample of the cotton which defendant had delivered to plaintiff, and requested that he inspect the 101 bales of cotton covered by the contract; that subsequently this Major Towles reported to the plaintiff and sent samples of the bales which he had examined; and that plaintiff's president testified that the samples sent by the plaintiff's inspector were " absolutely satisfactory." Plaintiff's president further testified that subsequently plaintiff received a bill of lading with draft from the defendant through a bank in the usual way, and that the draft was paid about three weeks before the goods were received, the plaintiff paying the full price for the goods. Plaintiff's president testified that fifty of these bales of waste came to Boston according to plaintiff's instructions, and the other bales were shipped to Philadelphia and were found satisfactory. The fifty bales that were shipped to Boston had been sold in the meantime by the plaintiff to the Goldberg Waste Company and were by the latter company sold or disposed of to another concern, D. McIntosh & Sons Company, who were the final purchasers. Evidence was offered to show that when these bales received by McIntosh & Sons Company were opened they were found to be " false packed " and were rejected by the final purchaser. Recourse was had to the plaintiff which in turn demanded of the defendant return of the purchase price or damages by reason of the breach of warranty on the sale of the goods. It is admitted that rejection of the goods did not occur nor was any complaint made until the latter part of April, 1920. For the first time on April 24, 1920, plaintiff wrote the defendant that the fifty bales of pickings, which had been shipped on November 5, 1919,

from Houston, Tex., to Boston, had just been opened and the bales found false packed and to contain caked and wet blocks of stock, and informing the defendant that the plaintiff could not accept the stock as a delivery and asking defendant to furnish disposition instructions promptly.

The theory upon which the plaintiff has recovered damages of the defendant for breach of warranty on the sale of the cotton waste was that the sale was by sample, and that defendant's warranty of the quality of the goods survived acceptance by the plaintiff, and that the plaintiff waived none of its rights through the inspection of the goods and acceptance thereof by its inspector, Major Towles. Plaintiff insists that the defective condition of the cotton, which consisted of the middle of the bales being wet and caked and of little or no value, was not discoverable upon a reasonable inspection and was a latent defect which the plaintiff did not waive by such inspection and acceptance thereunder. I do not think the warranty as to the quality of the goods sold survived acceptance after the plaintiff, through its agent, Towles, had inspected and accepted the goods. In the first place, the defendant had no personal knowledge of the condition of the bales of pickings which he sold to the plaintiff, and insisted, the plaintiff acquiescing therein, that the plaintiff should conduct an inspection of the goods sold in order that there might be no later objection as to the quality of the goods. Plaintiff accordingly employed its inspector for the very purpose of ascertaining whether the goods were up to the sample which the defendant had delivered to the plaintiff. In plaintiff's letter to its representative, Major Towles, at Houston, Tex., the plaintiff called particular attention to the very defects which it later on claimed existed in the goods covered by the contract and for which it has recovered the verdict. Plaintiff's letter to Major Towles, employing him to make the required inspection, is as follows:

"AMERICAN WASTE CO., INC.
" Member American Cotton Waste Exchange.
" Cotton and Cotton Waste.
" 10 High Street, Boston, Mass.
" *September 30th,* 1919.
" MAJOR C. TOWLES, Houston, Texas:

" DEAR SIR.— The New England Waste Co. have referred you to us, and we would like to have you look at 101 bales of Cotton Pickings which are the property of Joseph St. Mary, whose Houston office is at 202 Main Street.

" We are under separate cover sending you by special delivery our original purchase type.

" *In looking over the 101 bales in question, will you kindly see that any*

*bales containing any percentage of caked or short stock which does not appear in the original type is thrown out* as we aim to be very particular in the Pickings we buy.

"Also, send us your redraw sample with all possible dispatch.

" Thanking you for the courtesy of giving the matter your immediate attention, we remain,

" Very truly yours,

"AMERICAN WASTE CO., INC.,

" Per IRA A. STONE."

(Italics are the writer's.)

Thus it appears that the plaintiff required its inspector in making his examination to ascertain whether there was any caked or short stock contained in the bales of waste. The deposition of Major Towles upon the trial was to the effect that he made such examination and found the goods right and in merchantable condition and so reported to his principal, the plaintiff herein. It seems to me under such circumstances it cannot be said that the warranty of the defendant survived acceptance by the plaintiff after examination and inspection by its agent, Towles. Nor does it seem to me that the defects complained of were in fact latent defects. There was an abundance of evidence given upon the trial that it was an easy matter to ascertain whether the bales contained merchantable cotton throughout. Two witnesses at least testified that there was in general use an instrument known as an " auger " by means of which borings were made to the center of the bales and other places and samples of the contents of the bales were readily obtained. Apparently this would have been a very simple operation, and if there were a defect in the goods complained of it would have been easily discoverable.

The evidence upon the trial in regard to identification of the goods rejected by McIntosh & Co. as being the goods covered by the contract was extremely meager, and leaves serious doubt in our minds that the goods claimed to have been faulty were those in fact sold by the defendant to the plaintiff. This doubt is borne out by the fact that under the testimony the portion of the goods sold which went to Philadelphia was found correct in every respect. If the bales sold did contain the caked or solid matter which the plaintiff claims caused their rejection and were accepted by plaintiff's inspector, the damage should rest upon the plaintiff rather than the defendant, who had no connection with such examination and was in nowise responsible for the employment of Major Towles or his efficiency as an inspector.

It seems to me the reasonable rule to be applied to the facts in this case is that where parties stipulate that goods are to be of a

particular kind and up to a sample submitted, and at the same time stipulate that the goods are to be tested by a person to be selected by the purchaser before delivery to ascertain whether or not they are up to the quality represented, and where such test is made and the goods accepted and paid for, the purchaser cannot thereafter repudiate the sale or claim that the goods were not in accordance with the sample. There is no evidence in this case of any fraud or collusion between the defendant and plaintiff's inspector, and in the absence of fraud or collusion the decision of the inspector as to the quality of the goods should be binding upon his employer and conclusive against the plaintiff in this case, who subsequently received the goods. (*Monitor Milk Pan Co.* v. *Remington*, 41 Hun, 218, 224; *McParlin* v. *Boynton*, 8 id. 449.) In the latter case the court said (at pp. 453, 454): "The defendant had the privilege of selecting any person he chose. It was both his interest and duty to select an entirely competent and skillful man. If he failed to do that it was his misfortune or neglect. There can be no doubt that the defendant was not bound to take any of the saws rejected by the person he employed for not coming up to the requirements of the contract in any respect. It is more than probable that the defendant selected an incompetent man, but as all the saws, as they were made, were delivered into his hands and passed upon by him, and subsequently delivered to the defendant, no remedy remained for lack of compliance with the contract, unless on some ground of fraud, which is not alleged. The result of this view of the contract is, that the conclusion of the referee as to the liability of the defendant for the saws manufactured is correct; and his finding that the defects were readily discoverable by the use of certain appliances, becomes immaterial."

The plaintiff's president testified that he did not inform the defendant as to the use of the waste cotton which he desired to purchase. The defendant was not a manufacturer nor producer of this cotton waste. He had no knowledge of the contents of the bales. All he had was a sample which had been taken from the goods to be sold. This sample he submitted to the plaintiff with the request that the plaintiff look over the goods and determine whether or not they were merchantable and like the sample submitted. I think, under those circumstances, if there was any warranty as to the quality of the goods, the warranty was removed by the subsequent inspection and acceptance by the plaintiff. (*Coleman* v. *Simpson, Hendee & Co.*, 158 App. Div. 461, and cases cited.)

Furthermore, I do not think the plaintiff rejected the goods within a reasonable time after they had been delivered, accepted and paid for. The goods had passed out of the ownership and

control of the plaintiff and were sold by the plaintiff and resold to McIntosh & Co. No opportunity whatever was afforded the defendant to protect himself, as under the law the plaintiff had the right to sue for damages without return of the goods.

The judgment and order appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., SMITH, FINCH and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.